UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SANDRIO DEJESUS-ANDUJAR,<br><br>　　　　Petitioner,<br><br>vs.<br><br>RONDA J. PASH,<br><br>　　　　Respondent. | Case No.　15-0414-CV-W-DGK-P |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Sandrio DeJesus-Andujar, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 21, 2015, seeking to challenge his 2008 conviction and sentence for unlawful use of a weapon, which was entered in the Circuit Court of Livingston County, Missouri.

Petitioner asserts four (4) grounds for relief: (1) that trial counsel was ineffective for failing to object to evidence and argument concerning petitioner's status as an illegal immigrant; (2) that trial counsel was ineffective for failing to "secure and present evidence documenting [his] work schedule;" (3) that his conviction is invalid due to false arrest, false imprisonment, and false charges by the State; and (4) that trial counsel was ineffective for failing to present alibi evidence. Respondent contends that Ground 1 is without merit and that Grounds 2, 3, and 4 are procedurally barred.

**FACTUAL BACKGROUND**

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> The State charged Sandrio DeJesus-Andujar with first-degree assault and unlawful use of a weapon based on allegations that he assaulted his wife, "Ann," and threatened her with a knife. The case went to trial before a jury in September 2008. Viewed in the light most favorable to the verdict, the evidence showed the following.

Anne testified that on April 29, 2006, she worked at Wal-Mart from 2:00 p.m. to 10:30 p.m. When she got home, Andujar, who had been watching their three children, said he was going out. Around 1:30 a.m., Andujar woke Anne by pulling her out of bed by her hair and screaming, "I'm a crazy, f---ing Dominican." He dragged her by the hair from the bedroom to the living room and threw her on the loveseat. He then questioned her about people she talked to at work. He repeatedly punched and slapped her and nearly tore her t-shirt off.

Anne tried to call for help on her cell phone, but Andujar grabbed it and snapped it in two. Andujar pulled out his knife and held it to her throat. He told her he was going to cut her head off and let her children find her like that. He poked her in the stomach three times with the knife while threatening her. When she tried to use a cordless phone to call for help, Andujar threw that phone against the wall. When she went to the kitchen to use the wall phone, Andujar cut the cord. Andujar eventually calmed down and went to bed.

The next morning, Anne found the knife Andujar had used and hid it under a mattress. She left for work at 7:00 a.m. When she returned home that afternoon, Andujar left to go to his job out-of-state. He did not return home until May 9th, ten days later. Anne said she was afraid to call the police during that time, because Andujar had threatened to kill her and their children.

On May 10th, the day after Andujar returned to Missouri, he and Anne got into an argument at Wal-Mart. The argument then spilled over to Anne's parents' house, where they went to pick up their children. Anne's relatives got involved, and it started to become physical. At that point, Anne called the police. She did so, she said, because Andujar was threatening to kill her, the children, and everyone in her family.

Andujar left before the police arrived. Deputy Sheriff Jim Lightner was among the officers who responded. He asked for written statements from Anne and her relatives. Anne focused primarily on the events of that day, in her statement, but she also wrote: "Two weeks ago, [Andujar] beat me up, broke my cell phone, and cut the line to my house." Lightner then asked Anne to make a separate statement regarding that incident.

The next day, Anne went to the sheriff's department, and Deputy Lightner interviewed her about the incident two weeks earlier. Anne told Lightner about Andujar's attack on her on April 29th and gave a detailed written statement. She also gave the officer the torn t-shirt she had been wearing, her broken cell phone, and the knife Andujar had used. These allegations led to charges being filed against Andujar. No charges were filed as to the May 10th incident.

On redirect examination, Anne testified that Andujar had been abusive to her "the whole time" throughout the course of their marriage. Defense counsel

> objected to this as evidence of uncharged crimes. The trial court overruled the objection after finding that defense counsel had "opened the door" to it on cross-examination.
>
> Andujar's theory of defense was that Anne had fabricated the allegations about an assault on April 29th. Andujar testified that he had been working out-of-state on that date. He denied ever assaulting his wife or threatening her with a knife.
>
> The jury acquitted Andujar on the assault charge but convicted him of unlawful use of a weapon. The trial court sentenced Andujar to four years' imprisonment based on the jury's recommendation.

Respondent's Exhibit E, pp. 1-3 (internal footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1 – INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground 1, petitioner contends that trial counsel was ineffective for failing to object to evidence and argument concerning petitioner's status as an illegal immigrant. Specifically, petitioner contends that such is "prejudicial evidence of prior uncharged conduct or bad acts" and,

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

but for counsel's failure to object and attempt to exclude such, there is a reasonable probability that the outcome of the trial would have been different.

In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). This Court may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . ." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 post-conviction relief motion, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> "Failure to object to evidence is not sufficient, in and of itself, to constitute ineffective assistance of counsel." *Hays v. State*, 360 S.W.3d 304, 312 (Mo. App. W.D. 2012). To prevail on a claim of ineffective assistance of counsel for failing to object, DeJesus-Andujar must show that "(1) the objection would have been meritorious, and (2) the failure to object resulted in substantial deprivation of his right to a fair trial." *Id.* Additionally, the movant must prove that failing to object was not a strategic decision by trial counsel. *Id*.
>
> DeJesus-Andujar's Brief argues that trial counsel was ineffective for failing

to object to the testimony and argument regarding his immigration status. He argues that such evidence and argument is objectionable, because it makes reference to an uncharged crime, and invites the jury to convict the defendant based on an impermissible inference that he has a propensity to commit criminal acts.

As a general rule, evidence of uncharged crimes, misconduct, or prior bad acts that do not properly relate to the cause on trial are inadmissible. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993) (superseded by statute on other grounds). We recognize that numerous cases have held that a witness' status as an illegal immigrant is inadmissible at trial, because it has limited if any probative value even as to the witness' credibility; any marginal probative value of such evidence is outweighed by the potential that it will unfairly prejudice the jury against the witness. *See*, *e.g.*, *Figeroa v. United States Immigration & Naturalization Serv.*, 886 F.2d 76, 79 (4th Cir.1989); *Ayala v. Lee*, 81 A.3d 584, 599 (Md. App. 2013); *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 241-42 (Tex. 2010). On the other hand, evidence that a witness used false statements either to enter or remain in the United States *may* be relevant to the witness' credibility, although trial courts must carefully weigh the probative value of such evidence against its potential for unfair prejudice. *See*, *e.g.*, *United States v. Almeida-Perez*, 549 F.3d 1162, 1174 (8th Cir.2008) (citing *United States v. Cardales*, 168 F.3d 548, 557 (1st Cir.1999); *United States v. Cambindo Valencia*, 609 F.2d 603, 633–34 (2d Cir.1979)). Such use of a witness' prior false statements may be permissible under Missouri law, even where the false statements themselves involve a collateral issue. *Mitchell v. Kardesch*, 313 S.W.3d 667, 677 (Mo. banc 2010) ("When a person, regardless of whether a party, is being questioned on the witness stand, then long-standing Missouri law holds that the person may be asked about specific instances of his or her own conduct that speak to his or her own character for truth or veracity, even where the issue inquired about is not material to the substantive issues in the case."); *see also id.* at 679 ("Cross-examination may be had on issues relevant to the witness's character for truth and veracity regardless of whether the subject of the falsehood is material.").

Thus, it may be that the admission of evidence concerning DeJesus-Andujar's immigration status was erroneous, and that an objection to that testimony would have been sustained. On the other hand, testimony concerning his acquisition of false documents necessary to work or drive *may* have been admissible. We need not definitively resolve these issues, however, because whether or not objections would have been meritorious, DeJesus-Andujar has failed to establish that the motion court clearly erred in finding that he was not prejudiced by the admission of such evidence and argument.

DeJesus-Andujar's argument for prejudice is based on the theory that the jury may have concluded that his decision to enter the country illegally showed "tendencies towards breaking the law," making it more likely that he would have committed the acts with which he was charged. Br. at 16. By DeJesus-Andujar's

own admission on direct examination, however, he had been convicted and was serving time for two felonies, attempted forcible sodomy and property damage. Even assuming evidence concerning his immigration status was improper, "[w]hen improperly admitted evidence is merely cumulative to other properly admitted evidence, the admission of the evidence is not prejudicial." *State v. Myers*, 248 S.W.3d 19, 25 (Mo. App. E.D. 2008). The jury had already heard testimony about two felony convictions of DeJesus-Andujar, and thus testimony regarding his illegal immigration status was merely cumulative as to criminal tendencies. Further, it was unlikely that hearing evidence as to the defendant's immigration status would affect the jury's opinion of his guilt as to a violent crime, when the jury was *already* aware that he had been convicted of two such offenses. Moreover, the jury actually acquitted DeJesus-Andujar of the more serious first-degree assault charge, instead finding him guilty only of the unlawful use of a weapon.

We also note that the prosecution never suggested to the jury that DeJesus-Andujar's immigration-law violations demonstrated that he had a propensity to commit criminal acts such as those with which he was currently charged. Instead, in its rebuttal closing argument, the prosecution merely argued that DeJesus-Andujar's status as an illegal immigrant served to explain the victim's fear that, although he had stated that he was working out-of-state, DeJesus-Andujar could reappear at any time. While we find the prosecution's logic to be tenuous, it is significant that its remarks did not constitute an impermissible "propensity" argument.

The motion court did not clearly err in finding that counsel's failure to object to immigration-status evidence did not result in prejudice to DeJesus-Andujar, because the exclusion of this evidence would not have created a reasonable probability of a different outcome. Without showing that he was prejudiced by counsel's failure to object, DeJesus-Andujar failed to establish his ineffective assistance of counsel claim.

Respondent's Exhibit I, pp. 5-8.

The resolution of Ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the

Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]   Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 1 will be denied.

## GROUNDS 2, 3, & 4 – PROCEDURAL DEFAULT

In Ground 2, petitioner contends that trial counsel was ineffective for failing to "secure and present evidence documenting [his] work schedule."   In Ground 3, petitioner contends that his conviction is invalid due to false arrest, false imprisonment, and false charges by the State.   In Ground 4, petitioner contends that trial counsel was ineffective for failure to present alibi evidence.   Respondent contends that Grounds 2, 3, and 4 are procedurally defaulted.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750.   Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986).   Coleman, 501 U.S. at 748-50.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

A review of the record shows that petitioner did not raise Grounds 2, 3, and 4 on appeal from the denial of his Rule 29.15 motion. Therefore, Grounds 2, 3, and 4 are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of Grounds 2, 3, and 4. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Grounds 2, 3, and 4 is barred.

Grounds 2, 3, and 4 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is **DENIED**;

(2) this case is **DISMISSED** with prejudice; and

(3) the issuance of a certificate of appealability is **DENIED**.

    /s/ *Greg Kays*
GREG KAYS
CHIEF UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   December 15, 2015.